UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00216-TBR-LLK

TRACIE SUE HOPKINS,                                                                   PLAINTIFF

v.

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Tracie Sue Hopkins brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of Social Security's decision to deny her applications for disability benefits, disability insurance benefits, and supplemental security income. After Hopkins filed a motion for summary judgment, [DN 11; DN 12], the Magistrate Judge filed a report and recommendation regarding its appropriate disposition.  *See* 28 U.S.C. § 636(b)(1).  Subsequently, the Magistrate Judge recommended that the Court affirm the Commissioner's decision, deny Hopkins' motion, and dismiss her complaint. [DN 19.] Hopkins objects to that course of action, arguing that the ALJ erred when he improperly weighed the medical opinion evidence of Hopkins' treating physician and when he improperly evaluated Hopkins' credibility. [DN 20.] The Commissioner responded to Hopkins' objection. [DN 22.] Having reviewed the record, the Court agrees that the ALJ failed to properly consider the medical opinion evidence of Hopkins' treating physician. Accordingly, the Court **REJECTS** the Magistrate Judge's Report and Recommendation, [DN 19], and **SUSTAINS IN PART** Hopkins' Objection. [DN 20.] Hopkins' motion for summary judgment [DN 11] is therefore **GRANTED IN PART**. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion.

1

BACKGROUND

Tracie Sue Hopkins filed an application for disability and disability insurance benefits and an application for supplemental security income on July 30, 2012. [A.R. at 44.] She claims that she has been disabled since November 1, 2011. [*Id.*] Her alleged disabilities include fibromyalgia, migraine headaches, irritable bowel syndrome, depression, obesity, and a history of MRSA infections. [*Id.* at 47.] The Social Security Administration initially denied both of Hopkins' applications on November 19, 2012, and, upon reconsideration, adhered to that decision. [*Id.* at 44.] At Hopkins' request, Administrative Law Judge Scott T. Morris held an initial hearing on December 17, 2014, but Hopkins did not appear.  [*Id.*] However, the ALJ found good cause for Hopkins' failure to appear, and held a supplemental hearing on March 4, 2015. [*Id.*] In addition to Hopkins, the ALJ heard testimony from vocational experts Stephanie Barnes and James B. Adams. [*Id.* at 44.]

The ALJ denied Hopkins' claims on April 10, 2015. [*Id.* at 45.] Using the traditional five-step evaluation for disability benefits, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ made the following findings. First, the ALJ found that Hopkins had not engaged in substantial gainful activity since the alleged onset date. [A.R. at 46.] Second, Hopkins has multiple severe impairments, including fibromyalgia, migraine headaches, and irritable bowel syndrome (IBS).[1] [*Id.* at 47.] Third, the ALJ found that Hopkins' impairments do not meet or equal one of the Commissioner's recognized impairments. [*Id.* at 50.] Fourth, Hopkins retains the residual functional capacity to perform a range of light work, although not any of her past relevant work. [*Id.* at 50, 53.] Fifth, in light of her age, education, work experience, and residual functional capacity, Hopkins is able to perform jobs that exist in significant numbers in the national

---

[1] The ALJ found that Hopkins' depression, obesity, and history of MRSA infections were nonsevere impairments. [A.R. at 47.]

economy. [*Id.* at 53–54.] The ALJ, therefore, determined that Hopkins is not disabled within the meaning of the Social Security Act. [*Id.* at 54.]

The Appeals Council declined to review the ALJ's decision on August 6, 2015. [*Id.* at 2–4.] Accordingly, the ALJ's denial became the final decision of the Commissioner. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004) (citing *Miles v. Chater*, 84 F.3d 1397, 1399 (11th Cir. 1996)).  Pursuant to 42 U.S.C. § 405(g), Hopkins brought this action to obtain judicial review of the Commissioner's decision.  [*See* DN 1 (Complaint).]

The Court referred Hopkins' action to Magistrate Judge Lanny King for a report and recommendation regarding its appropriate disposition.  *See* 28 U.S.C. § 636(b)(1).  The Magistrate Judge recommended that the Court affirm the Commissioner's decision, deny Hopkins' motion for summary judgment, and dismiss Hopkins' complaint.  [*See* DN 19 (Report and Recommendation).]  Hopkins objects to that course of action.  [*See* DN 20 (Hopkins' Objection).]  The Commissioner responded to Hopkins' objection. [*See* DN 22 (Commissioner's Response).]

STANDARD

It is well-settled that the Court reviews the objected-to portions of a report and recommendation *de novo*.  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Its review of the Commissioner's determination is, of course, more deferential.  *See* 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The scope of that inquiry is limited to (1) "whether the findings of the ALJ are supported by substantial evidence" and (2) "whether the ALJ applied the correct legal standards."  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 405–06).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   Even if supported by substantial evidence, however, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

DISCUSSION

In this case, Hopkins argues that the ALJ erred when he failed to properly consider the medical opinions of Hopkins' treating physician, Dr. Christopher King, and when he failed to properly evaluate the credibility of Hopkins' testimony. [*See* DN 12 at 14–22 (Hopkins' Memorandum of Law in Support of Motion for Summary Judgment).]

Dr. King, a board-certified neurologist, first treated Hopkins for her fibromyalgia and migraine headaches on February 17, 2011. [*Id.* at 400, 638.] Dr. King diagnosed Hopkins with "[u]nspecified myalgia and myositis," "[c]hronic migraine without aura," and insomnia. [*Id.* at 400.] Hopkins then saw Dr. King for follow up appointments every three months, [*Id.* at 638], including on May 17, 2011, August 22, 2012, October 22, 2012, May 17, 2013, and August 15, 2013. [*Id.* at 403, 470, 514, 517, 524.] Dr. King filled out a Headache Impairment Questionnaire and a Fibromyalgia Impairment Questionnaire for Hopkins on December 30, 2013. [*Id.* at 540–45, 546–51.]   On the Headache Impairment Questionnaire, Dr. King noted that Hopkins' prognosis was "good," but that "she often has migraines that last as long as three days," her pain is "severely intense," that the approximate frequency of her migraines was "weekly," and that Hopkins was unable to tolerate "even 'low stress'" at work. [*Id.* at 638–42.] With regard to "other limitations that would affect your patient's ability to work at a regular job on a sustained

4

basis," Dr. King checked the following limitations: psychological limitations, need to avoid wetness, need to avoid noise, need to avoid fumes, need to avoid gases, limited vision, need to avoid temperature extremes, no pushing, no pulling, no kneeling, no bending, and no stooping. [*Id.* at 642.]

On the Fibromyalgia Impairment Questionnaire. Dr. King again stated that Hopkins' prognosis was "good," but identified Hopkins' primary symptoms as "pain, loss of sensation, fatigue, depression, IBS, [and] weakness." [*Id.* at 646.] Dr. King identified the locations of Hopkins' pain as in her lumbrosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet. [*Id.* at 646–47.] Dr. King described the frequency of Hopkins' pain as "daily," the severity of her pain as a nine out of ten, and opined that Hopkins could only sit between 0-1 hours in an eight-hour day and could only stand/walk between 0-1 hours in an eight-hour day. [*Id.* at 647–48.] Moreover, Dr. King opined that Hopkins must get up to move around every twenty minutes and could not sit again for twenty minutes. [*Id.*] As far as lifting, Dr. King stated that Hopkins could occasionally lift or carry between 0-20 pounds but could never lift or carry more than that. [*Id.*] Dr. King further estimated that Hopkins would sometimes need to take unscheduled breaks during an eight-hour workday, and that these unscheduled breaks would occur "at least every 30 mins" and would last twenty minutes. [*Id.* at 649.] Moreover, Hopkins would need to be absent from work due to her limitations approximately "two to three times a month." [*Id.*] Dr. King again noted that Hopkins is unable to tolerate any stressful situations." [*Id.*]

The ALJ gave Dr. King's medical opinions "little weight." [*Id.* at 52.] In doing so, the ALJ stated that, although Dr. King opined that Hopkins was "severely limited due to her impairments," these assessments were not supported by objective medical evidence, were

inconsistent with the opinions of the examining and reviewing physicians, and relied heavily on Hopkins' subjective complaints about her impairments, which the ALJ found only "partially credible." [*Id.*]

In turn, the ALJ gave "great weight" to the opinion of Dr. Kershner, a consultative examining physician who examined Hopkins at the request of the Social Security Administration on October 20, 2012. [*Id.* at 490.] After examining Hopkins, Dr. Kershner opined that, while Hopkins stated that "she can sit for approximately 20 minutes before developing back and leg pain requiring her to change position," Dr. Kershner "fe[lt] that she would be able to do this for at least 30 minutes." [*Id.* at 492.] Dr. Kershner further stated that Hopkins "is able to stand without difficulty. She can walk for 30 minutes at a slow pace before developing paid requiring her to rest. She does not have any lifting or carrying restrictions. She can drive and handle objects without difficulty." [*Id.*]

The ALJ additionally gave great weight to the opinion of Dr. Muehleman, a consultative psychologist who evaluated Hopkins at the request of the Social Security Administration on October 2, 2012. [*Id.* at 52, 482–86.]  Dr. Muehleman diagnosed Hopkins with depressive disorder and opined that, "strictly from the point of view of depression," Hopkins "is only mildly impaired." [*Id.* at 486.] However, Dr. Muehleman emphasized that he made this assessment based only on Hopkins' depression, "but the pain is what interferes with her functioning." [*Id.*]

Under the Social Security Act, "the Commissioner determines whether a claimant is disabled," and, therefore, "entitled to benefits." *Blakley*, 581 F.3d at 405 (citing 42 U.S.C. § 405(g)). In evaluating a claimant's status, the Commissioner has instructed ALJs to consider all "medical opinions" offered in the claimant's case. *See* 20 C.F.R. § 404.1527(b)–(c). "Medical opinions" are statements from "acceptable medical sources that reflect judgments about the

6

nature and severity" of the claimant's impairment. *Id.* § 404.1527(a)(1). The ultimate weight assigned to, and the depth of consideration of, those opinions will depend on the classification of the source as nonexamining, nontreating (but examining), or treating. *Id.* § 404.1502.

A nonexamining source is a "physician" or "other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." *Id.* A nontreating (but examining) source has examined the claimant, "but does not have, or did not have, an ongoing treatment relationship" with the claimant. *Id.* A treating source, to whom the Commissioner affords the most deference, has not only examined the claimant, but also has "an ongoing treatment relationship" with her too. *Id.*

If a medical opinion is from a "treating source," the ALJ must give greater weight to these opinions because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). Moreover, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). However, if the ALJ decides not to afford the opinion of a treating source controlling weight, the ALJ must determine what weight to give the opinion by applying specific factors, "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of

the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

Not only must the ALJ balance these factors, but "the regulation also contains a clear procedural requirement: 'We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.") These reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)).

Here, the parties do not dispute that Dr. King was Hopkins' treating physician, and that the ALJ did not give Dr. King's medical opinions controlling weight. [DN 19 at 8; DN 20 at 2; DN 22 at 3.] Accordingly, the issue for the Court is whether the ALJ properly assessed the specific factors for determining how much weight to give Dr. King's opinions and whether the ALJ provided good reasons for his determination to give those opinions little weight. Hopkins contends that he did not, and the Court agrees.

The ALJ stated in his decision that he gave little weight to Dr. King's

opinions . . . on numerous medical source statements and assessments, as his opinions are not well-supported by objective medical evidence and are indeed inconsistent with the objective medical record and the opinions of examining and reviewing physicians of record. Dr. King's opinions appear to rely heavily on the claimant's subjective complaints, which are only partially credible . . . Notably, Dr. King found the claimant severely limited due to her impairments, but repeatedly characterized her prognosis as good, rendering his statements and assessments internally inconsistent.

8

[A.R. at 52.]

The ALJ went on to find that Dr. Kershner, a one-time examining physician, gave an opinion that "is well supported by objective examination of findings as well as the record as a whole." [*Id.*] Similarly, the ALJ found Dr. Meuhleman's opinion to be "well supported by the evidence as a whole" and found that "Dr. Meuhleman also provided thorough reasoning to support his opinion." [*Id.*] The ALJ further found the opinions of reviewing psychologists Nancy Hinkeldy, Ph.D. and Dan Vandiview, Ph.D. to be supported by the objective medical record. [*Id.*]

But the soundness of the opinions of the nonexamining and nontreating (but examining) physicians in this case does not relieve the ALJ of his responsibility to state, with specificity, why Dr. King's opinions were not entitled to controlling weight and to provide good reasons for assigning them little weight. As noted above, relevant factors for the ALJ to consider include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544. Though the ALJ need not explicitly mention each factor, he still must conduct an analysis sufficient for the Court to engage in a "meaningful review of the ALJ's application of the [treating physician] rule." *Id.* The Court is not convinced that the ALJ did so here. *See Cole*, 661 F.3d at 938 ("Balancing the *Wilson* factors is required to satisfy the second prong of the treating physician rule.")

Dr. King treated Hopkins approximately every three months for more than two years, [A.R. at 638], which appears to indicate a somewhat extensive treatment relationship. Moreover, the Court is unconvinced that the mere fact that Dr. King identified Hopkins' prognosis as

"good," as the ALJ noted, is sufficient to render his opinions "internally inconsistent." [*Id.* at 52.] The Magistrate Judge held that the ALJ's decision to give Dr. King's opinions little weight on this basis was reasonable. [DN 19 at 8 (citing A.R. at 52).][2] However, as Hopkins argues in her Objection, the fact that she had a good prognosis "does not mean that the conditions at the time are not disabling." [DN 20 at 3.] Although Dr. King "may have been hopeful that [Hopkins] would improve in the future, such a finding is not particularly relevant to her level of functioning during the current period at issue." [DN 12 at 16.]

With regard to the consistency of Dr. King's opinions with the rest of the record, the ALJ perhaps briefly touched on this factor in stating that Dr. King's opinions were inconsistent with the opinions of other examining and reviewing physicians, but he did not elaborate on this finding. [*See* A.R. at 52.] Accordingly, the Court is hard-pressed to say that the ALJ's findings constitute good reasons "sufficiently *specific* to make clear to any subsequent reviewers . . . the reasons for that [little] weight." *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996) (emphasis added)).

Further, the ALJ found that Dr. King relied in part on Hopkins' own complaints about her illnesses, which the ALJ found to be "only partially credible." [A.R. at 52.] However, as Hopkins points out, it appears Dr. King also made objective medical determinations related to her illnesses. For example, Dr. King stated in the Fibromyalgia Impairment Questionnaire that labs,

---

[2] The Magistrate Judge alternatively found that Dr. King's opinions were not "legitimate medical opinions" that the ALJ could have considered, but rather were opinions on the ultimate issue of disability "reserved to the Commissioner." [DN 19 at 8–9.] This is incorrect. Dr. King did not offer any opinion as to Hopkins' status as disables. Rather, he offered his opinion on various medical and work-related factors. And, as multiple courts have held, the mere fact that medical opinions, "if accepted, impact the ALJ's determination of RFC—they always do, because that is what they are for— . . . that does not make the medical findings an impermissible opinion on RFC itself. If doctors could only give opinions on matters that could not affect RFC, medical opinions would be inherently useless in disability determinations." *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011).

x-rays, MRSs, and CT scans, objective medical tests, all "demonstrate and/or . . . support [his] diagnosis" of Hopkins. [*Id.* at 646.]

For these reasons, the Court is skeptical as to whether the ALJ engaged in a sufficient review of the *Wilson* factors and as to whether the ALJ provided the good reasons required under 20 C.F.R. § 404.1527(c)(2) for giving Dr. King's medical opinions little weight. If the ALJ fails to follow those regulations and that error "prejudices a claimant on the merits or deprives the claimant of a substantial right," the ALJ's decision will not be upheld.  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). The Sixth Circuit has identified § 1527(c)(2) as a regulation intended to "creat[e] an important procedural safeguard for claimants for disability benefits," thereby rendering the violation of it the deprivation of a substantial right. *Wilson*, 368 F.3d at 547 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Moreover, the Court cannot say that this error was harmless, as it likely affected the determination of Hopkins' residual functioning capacity at step five of the evaluation process.

> The assessment of the medical evidence conducted at a hearing is particularly important at Step 5 of the evaluation of a social security disability claim because the RFC articulated by the ALJ will be used by the vocational expert to assess the claimant's ability to perform work. In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, "the question[s] must accurately portray a claimant's physical and mental impairments."

*Cole*, 661 F.3d at 939 (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)). Even if, on remand, it turns out that Dr. King's opinions "should not ultimately be accorded controlling weight . . . , the ALJ did not go through the required analysis to arrive at that conclusion." *Id.* Indeed, "a procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway" such as in cases where there may ultimately be "sufficient evidence in the record for the ALJ to discount the treating source's opinion." *Wilson*, 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719

n.41 (D.C. Cir. 1977)). Rather, the Sixth Circuit has repeatedly held that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not *comprehensively* set forth the reasons for the weight assigned to a treating physician's opinion." *Cole*, 661 F.3d at 939 (emphasis added). The Court finds that this is the case here, and therefore that remand to the Commissioner is proper. Having found remand proper on this basis, the Court need not address Hopkins' second assignment of error, that is, that the ALJ failed to properly weigh the credibility of her testimony about her illnesses.

CONCLUSION

**IT IS HEREBY ORDERED** that the Court **REJECTS** the Magistrate Judge's Report and Recommendation, [DN 19], and **SUSTAINS IN PART** Tracie Sue Hopkins' Objection, [DN 20]. Hopkins' motion for summary judgment [DN 11] is therefore **GRANTED IN PART**. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion.

The Clerk of the Court is **DIRECTED** to close the above-captioned action.

**IT IS SO ORDERED**.

cc:    Counsel of Record